IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND HILL, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-5019 |
| | : | |
| CHESTER COUNTY PRISON, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**PADOVA, J.**                                                                                 **NOVEMBER 17, 2025**

*Pro se* incarcerated Plaintiff Raymond Hill filed this civil action under 42 U.S.C. §1983 against Chester County Prison ("CCP"), C/O Dennision, and C/O Amozou alleging violations of his constitutional rights and of the Prison Rape Elimination Act ("PREA"). He seeks leave to proceed *in forma pauperis*. (ECF Nos. 1, 5.) For the following reasons, the Court will grant Hill leave to proceed *in forma pauperis*, dismiss his claims against Defendants CCP and Amozou with prejudice, dismiss the PREA claim with prejudice, and permit Hill's retaliation claim against Dennision to proceed.

## I.     FACTUAL ALLEGATIONS[1]

Hill is a pretrial detainee incarcerated at CCP. (Compl. at 2.) In April 2025, as Defendant Dennision was making his rounds at CCP, he stopped at Hill's cell. (*Id.*) Hill alleges that Dennision told Hill to take a bedsheet off his body so that he could see "flesh and

---

[1] The factual allegations set forth in this Memorandum are taken from Hill's handwritten Complaint and attachments (ECF No. 2). The Court deems the entire submission to constitute the Complaint and adopts the pagination supplied by the CM/ECF docketing system. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up as needed.

movement." (*Id*.) Hill allegedly replied, "Yo Bro don't make any weird statements to me like that. There are female inmates that [are] housed in this jail, that would be sexual harassment to a woman if you made that statement." (*Id*. at 2-3.) Dennision apparently agreed and went on with his rounds. (*Id*. at 3.)

On August 5, 2025, Dennision worked on the "M-Even" block from 4 p.m. to 12 a.m. Hill and inmates in cell numbers 34 and 38 hung sheets to cover half of their cell gates so that their private parts would not be exposed while they used the bathroom or returned unclothed from the shower. (*Id*.) Dennision ordered them to take the sheets down or he would remove them. (*Id*.) Hill responded that if the sheets were up, it meant they were naked in their cells and they did not want to be exposed to the 60 other inmates and a female nurse who visits the block three times a day to administer medication. (*Id*.) Hill requested that Dennision call a supervisor or issue a citation instead of taking the sheets down. (*Id*.) Dennision "ripped everyone[']s] sheets down while they were naked." (*Id*.) Hill states that he, along with 30 other inmates who witnessed the incident, phoned the PREA hotline. (*Id*.) Hill also told his girlfriend, who also called the hotline and filed a complaint on Hill's behalf. (*Id*. at 3-4.) When Dennision worked on the M block on August 7, he again took down the sheets while inmates were naked. (*Id*. at 4.) Hill phoned the PREA hotline. (*Id*.) Despite being promised that someone would interview him, he never heard back. (*Id*.) Hill submitted grievances "and request slips" to Deputy Warden Roberts, Captain Hardid, and Major Theobold, but received no response. (*Id*.) He also wrote to the Prison Society and his girlfriend allegedly emailed the same about the incident. (*Id*.)

On August 8, around 6 or 7 p.m., Defendant Amozou worked on M-block, but during the lock-in after the evening meal, Dennision appeared at Hill's cell even though he was not working on the block. (*Id*.) Dennision allegedly told Hill, "you like making calls, right?" which Hill

2

understood to refer to his calls to the PREA hotline. (*Id*.) Dennision and Amozou searched Hill's cell. (*Id*. at 5.) Dennision "targeted" Hill and did not search other cells. (*Id*. at 4.) Hill asked for a supervisor. (*Id*. at 5.) Amozou responded by threatening to "whip [Hill's] ass," and telling Hill that he "lived under a bridge" and was a crackhead and junkie. (*Id*.) Hill's cellmate had to step in front of Amozou to stop him from hitting Hill. (*Id*.) Hill claims these events were captured on the 24-hour surveillance camera on M-block. (*Id*.) A representative or representatives from the Prison Society visited Hill on August 13 "to discuss the situation" and Hill filed a complaint with them. (*Id*.) According to Hill, no one from CCP contacted him to discuss the incident. (*Id*.)

Hill claims that "[o]n M-block the shower is in plain view of 60 inmates, 1 correctional officer, and 1 female nurse and we inmates are forced to shower naked in plain view of all[;] there is no shower curtain." (*Id*. at 5.) He asserts that a retired state trooper who is a PREA representative interviewed Hill during a July 2025 PREA audit, and Hill conveyed the need for a shower curtain. (*Id*. at 6.) He claims that the trooper agreed. (*Id*.) Hill states that "We need a shower curtain[;] today is Aug. 14, 2025, and we still have no shower curtain." (*Id*.)

Hill contends that CCP's grievance system is "broken," a "black hole," and that he has filed numerous grievances in the past and never received "a resolution or response." (*Id*. at 7.) Hill submitted a grievance on August 12, 2025, about the events involving Dennision's alleged "voyeurism" and Amozou's attempt to fight him. (*Id*. at 10.) Dennision issued a citation against Hill for putting the sheet up in his cell, which Hill claims was retaliation for his calling the PREA hotline. (*Id*. at 7.) After a hearing on August 14, Hill was found not guilty. (*Id*. at 7-8, 11.)

3

Hill's lawsuit was docketed in this Court on August 26, 2025. He states that his injuries include mental and emotional damage because he was molested as a child, and the actions of CCP and Dennision made him fearful of being molested again. (*Id*. at 6.) As relief, he seeks release from custody and money damages.[2] (*Id*. at 7.)

## II.   STANDARD OF REVIEW

The Court will grant Hill leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Hill is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

---

[2] To the extent Hill seeks his release, such relief is not appropriate in a civil rights action. *See Garrett v. Murphy*, 17 F.4th 419, 430 (3d Cir. 2021) ("[W]henever a plaintiff pleads a violation of § 1983 and effectively seeks habeas relief, the plaintiff fails to state a § 1983 claim. Instead, the prisoner's only federal remedy is through a writ of habeas corpus after exhausting state remedies.").

[3] Hill is a prisoner, and he will be obligated to pay the $350 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

### III. DISCUSSION

Hill's Complaint expressly raises claims for sexual harassment against Dennision and CCP in violation of the Fourteenth and Eighth Amendments.[4] (Compl. at 2.) The Complaint may also be fairly read to include claims for excessive force under the Fourteenth Amendment against Amozou, a violation of Hill's Fourteenth Amendment due process rights against CCP, a Fourth Amendment claim for violation of privacy, and a First Amendment retaliation claim against Dennision for searching Hill's cell and filing a citation after Hill reported the alleged sexual harassment. *See Vogt*, 8 F.4th at 185 (stating that the Court will "apply the relevant legal principle even when the complaint has failed to name it." (quoting *Mala*, 704 F.3d at 244)).

The vehicle by which federal constitutional claims may be brought in federal court is an action under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

#### A. Federal Claims Against CCP

Hill names CCP as a Defendant, but it is not a proper defendant in this § 1983 action. The Court will accordingly dismiss any claims asserted against CCP because a jail or

---

[4] Hill alleges that he was a pretrial detainee at the time of the alleged events (Compl. at 3); accordingly, the Fourteenth Amendment, and not the Eighth Amendment, governs his constitutional claims for the alleged sexual harassment and excessive force. *See Jacobs v. Cumberland Cnty*, 8 F.4th 187, 193-94 (3d Cir. 2021) (citations omitted).

5

correctional facility is not a "person" under § 1983.[5]  *Edwards v. Bucks Cnty. Corr. Facility*, Civ A. No. 19-4923, 2019 WL 5579486, at *2 (E.D. Pa. Oct. 29, 2019) ("County jails are not 'persons' that are 'subject to suit under federal civil rights laws'" and thus, "Bucks County Correctional Facility is not an entity susceptible to suit under § 1983." (quotation omitted)); *Cephas v. George W. Hill Corr. Facility*, Civ. A. No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010).

     **B**.    **Federal Claims Against Defendants Dennision and Amozou**

        **1.**    **Excessive Force Claim Against Amozou**

The Fourteenth Amendment to the United States Constitution, § 1, guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  It protects pretrial detainees from "the use of excessive force that amounts to punishment."  *Jacobs*, 8 F.4th at 193-94 (citing *Graham v.* Connor, 490 U.S. 386, 395 n.10 (1989)).  To state a due process violation based on excessive force, a pretrial detainee must plausibly allege that "that the

---

[5] Even if he named a proper defendant, Hill's claims would nonetheless lack plausibility.  Hill asserts that the grievance procedure at CCP is "broken" and claims that he has filed numerous past grievances without resolution or response.  (Compl. at 7.)  He also contends that the CCP did not investigate the cell search incident with Dennision and Amozou.  (*Id*. at 5.)  As to his complaints about the grievance system, "prisoners do not have a constitutional right to prison grievance procedures."  *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001), and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).  Accordingly, allegations such as those raised by Hill predicated on failures of the grievance process or lack of response to grievances do not give rise to a constitutional claim.  *See Woods v. First Corr. Med. Inc.*, 446 F. App' x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (quotations and citations omitted)).

force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).  "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397 (citation omitted).  Whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'" *Jacobs*, 8 F.4th at 194 (quoting *Graham*, 490 U.S. at 396).

Hill claims that Amozou, after searching his cell with Dennision, threatened to "whip [Hill's] ass" and called him various names for a drug addict.  (Compl. at 5.)  Hill states that his cellmate "jumped in front of C/O Amozou to stop him from hitting me."  (*Id*.)  He does not allege that any physical contact occurred.  In light of these limited allegations, Hill does not state a plausible claim here because threats of bodily harm and name-calling, by themselves, are an insufficient basis for a § 1983 claim.  *See Kennedy v. PrimeCare, Inc.*, Civ. A. No. 24-841, 2025 WL 950406, at *4 (M.D. Pa. Mar. 28, 2025) (holding that verbal harassment and threats to a pretrial detainee by a corrections officer, "although unpleasant, do not amount to a Fourteenth Amendment violation" (citing *Bressi v. Brennen*, Civ. A. No. 17-1742, 2018 WL 3596861, at *9 (M.D. Pa. July 6, 2018), *report and recommendation adopted*, 2018 WL 3584687 (M.D. Pa. July 26, 2018)); *see generally Smith v. Mun. of Lycoming Cnty.*, 335 F. App'x 147, 150 (3d Cir. 2009) ("Mere verbal harassment or abuse . . . is not a civil rights violation." (citation omitted)); *see also Ayala v. Terhune*, 195 F. App' x 87, 92 (3d Cir. 2006) (*per curiam*) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983." (citations

omitted)); *Wright v. O'Hara*, Civ. A. No. 00-1557, 2004 WL 1793018, at *7 (E.D. Pa. Aug. 11, 2004) ("Where plaintiff has not been physically assaulted, defendant's words and gestures alone are not of constitutional merit." (quotations omitted)).  Hill's claim of excessive force against Amozou will therefore be dismissed with prejudice for failure to state a claim.  28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. Claims against Dennision

#### a. Due Process Claim for Sexual Harassment

Sexual abuse of a prisoner can violate his Constitutional rights.  *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (citations omitted); *E. D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019).  The Court understands Hill's claim to be one for voyeurism on the part of Dennision, as Hill does not allege any contact of a sexual nature.  *See Higgs v. N.J. Dep't of Corr.*, Civ. A. No. 24-1712, 2024 WL 3811985, at *2 (3d Cir. Aug. 14, 2024) (*per curiam*) (determining that complaint did not allege anything sexual beyond a "bald assertion of voyeurism" when prison guard opened shower curtain and stood with it open for a few seconds).  For a pretrial detainee, a sexual abuse claim is analyzed using an objective-reasonableness standard; that is, whether the prisoner has alleged "facts that plausibly show that the actions of the defendant were objectively unreasonable."  *Chin v. Warfel*, Civ. A. No. 23-4220, 2024 WL 665536, at *4 (E.D. Pa. Feb. 15, 2024) (considering pretrial detainee's sexual abuse claim on statutory screening and utilizing an objective reasonableness standard) (citations omitted)).

Hill alleges that, on one occasion, Dennision asked him to move a sheet covering his private parts so that he could see "flesh and movement."  (Compl. at 2.)  After Hill pointed out that the comment would constitute harassment if it were said to a woman, Dennision agreed and left Hill alone.  (*Id.*)  Hill also appears to challenge Dennision's "ripping down" sheets while Hill

was naked, exposing his body on two occasions. (*Id*. at 3-4.) Allegations of "non-verbal, non-physical staring on several occasions," are not "sufficiently intolerable and cruel" under the objectively unreasonable standard to state a constitutional violation. *Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 944, 950 (3d Cir. 2019) (citations omitted) (affirming dismissal of claim alleging that officer stared at inmate's groin area on numerous occasions "for an uncomfortable duration" when inmate wore underwear); *Higgs*, 2024 WL 3811985, at *2 (affirming dismissal of Eighth Amendment claim for officer's pulling back shower curtain and concluding that "[s]uch bald assertions [of voyeurism] are insufficient to satisfy the objective or subjective prong of the analysis" (citation omitted)); *Chin*, 2024 WL 665536, at *4 (rejecting Fourteenth Amendment sexual abuse claim where correctional officer allegedly made a derogatory remark about the size of inmate's genitals). Hill has not pleaded a plausible Fourteenth Amendment claim and it will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) without prejudice.

b.     **Claim for Invasion of Privacy**

To the extent that Hill challenges Dennision's removal of the sheets as a separate violation of his constitutional right to privacy, the claim fails to rise to the constitutional standard. The Fourth Amendment to the United States Constitution, as incorporated to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Prisoners have a "limited right of bodily privacy, subject to reasonable intrusions necessitated by the prison setting." *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016). "The test of reasonableness under the Fourth Amendment ... requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

9

Hill claims that, on two occasions, he had put up sheets to protect his bodily privacy. (Compl. at 3-4.)  Dennision made an announcement to take down the sheet, and, when Hill did not comply, Dennision "ripped" it down while Hill was naked.  (*Id*.)  Hill alleges that he told Dennision on August 5 that he put up the sheet to avoid being in view "of 60 other inmates and also a female nurse who comes to the block 3 times a day."  (*Id.* at 3.)  It is unclear whether anyone could or did view Hill naked or using the bathroom on those two occasions.  In particular, Hill has not pleaded any factual allegations about whether the female nurse actually saw him naked on those occasions.

As to Hill's argument that a correctional officer and/or other inmates could briefly view Hill unclothed, the Complaint does not plausibly allege a constitutional deprivation, given the realities of prison life.  *See Pickett v. Williams*, Civ. A. No. 23-1411, 2023 WL 3044589, at *4 (E.D. Pa. Apr. 21, 2023) (finding no plausible constitutional violation where officer opened cell door while prisoner was using toilet, looked at prisoner's penis, and opened door for others on the block to see prisoner (citing *Bracey v. Price*, Civ. A. No. 09-1662, 2012 WL 6015727, at *17 (W.D. Pa. Dec. 3, 2012) ("Occasional viewing of inmates while showering or using toilet facilities has been held to be appropriately within the parameters of maintaining institutional security and therefore, constitutional."));  *Williams v. Ann Klein Forensic Ctr.*, Civ. A. No. 18-9606, 2020 WL 614657, at *3 (D.N.J. Feb. 10, 2020) ("In the context of allegations regarding viewing plaintiff on the toilet, courts typically look to whether incident(s) were regular/frequent and how close the viewing was in determining whether a plaintiff has stated a Fourth Amendment constitutional claim.")).  To the extent that Hill alleges that a nurse who comes through the unit periodically *could* have briefly seen him naked, this allegation does not suffice to state a constitutional claim under the circumstances.  *See Rivera v. Doe*, No. 22-852, 2023 WL

10

319600, at *3 (D. Conn. Jan. 19, 2023) (noting the difference between "'regular' and 'close' viewings of a naked prisoner by the opposite sex and 'incidental' and 'brief' viewings," and finding the incidental and brief viewings constitutional (quotation and citations omitted)); *Kiser v. Bradley*, Civ. A. No. 20-562, 2023 WL 3690261, at *16 (N.D. Ala. May 1, 2023) (dismissing claim where plaintiff's factual allegations did not establish she involuntarily exposed her genitals to members of the opposite sex), *report and recommendation adopted,* 2023 WL 3690241 (N.D. Ala. May 26, 2023); *cf. Easley v. Tritt*, Civ. A. No. 17-930, 2021 WL 978815, at *10 (M.D. Pa. Mar. 16, 2021) (noting that, "when female staff members' observations of naked prisoners are done for a valid penological reason, no Eighth Amendment violation exists" (citation omitted)). For these reasons, Hill's claim for a violation of his bodily privacy will be dismissed without prejudice for failure to state a claim. *See Pickett*, 2023 WL 3044589, at *4 (dismissing privacy claim and explaining that "[w]hile unpleasant, the lack of privacy to use the toilet is a normal aspect of prison life with which a convicted person must abide." (citing *Rhodes v. Chapman*, 452 U.S. 337 (1981)).

        **c.**      **Retaliation Claim**

To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct, which includes filing grievances; (2) he suffered an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (alteration in original) (quotations omitted); *see also Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). Filing a PREA complaint or expressing the intent to do so is a constitutionally protected activity. *Naranjo v. Walter*, No. 22-3435, 2023 WL 5928506, at *2 (3d Cir. Sept. 12,

2023) (*per curiam*) (citation omitted).  "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'"  *Watson*, 834 F.3d at 423 (alterations in original) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)).

In his Complaint, Hill contends that Dennision retaliated against him for calling the PREA hotline on August 5 and 7 by searching his cell and filing a citation against him.  (Compl. at 4-5, 7.)  Hill claims that, on August 8, Dennision appeared on his unit and said, "you like making calls, right?" which Hill believed to refer to his reporting of Dennision's alleged harassment.  (*Id.* at 4.)  Dennision and Amozou then searched Hill's cell.  (*Id.* at 4-5.)  Hill has met the first requirement for asserting a retaliatory claim because he alleges that he had registered a complaint or complaints alleging PREA violations.  *Naranjo*, 2023 WL 5928506, at *2.

As to the second requirement, the cell search alone does not meet the "more than *de minimis*" requirement for pleading a retaliation claim.  *Heagy v. Terra*, Civ. A. No. 25-2672, 2025 WL 1656775, at *9 (E.D. Pa. 2025 Jun. 11, 2025) (dismissing retaliation claim with prejudice because cell search did not qualify as an "adverse action" and citing cases); *Banks v. Rozum*, Civ. A. No. 14-27, 2015 WL 1186224, *7 (M.D. Pa. March 13, 2015) (concluding that a cell search was not a sufficient adverse action to state a retaliation claim), *aff'd*, 639 F. App'x 778, 781-82 (3d Cir. 2016); *Smith v. Ohrman*, Civ. A. No. 22-1005, 2023 WL 5944115, at *18 (W.D. Pa. Jul. 19, 2023) (concluding that officers' actions of searching and "destroying" prisoner's cell were *de minimis* and not retaliatory conduct).  However, Hill also alleges that Dennision filed a citation against him in retaliation for Hill's phoning the PREA hotline.  (Compl. at 7.)  An officer's filing of a misconduct against an inmate for registering a complaint under PREA is greater than just a *de minimis* consequence and qualifies as an adverse action.

12

*See Watson*, 834 F.3d at 423; *Williamson v. Polton*, 2025 WL 1232624, at *2 (3d Cir. Apr. 29, 2025) (*per curiam*) (vacating dismissal of retaliation claim where officer filed Class I misconduct against inmate who filed PREA complaint). Accordingly, Hill has sufficiently alleged that he suffered adverse action. *See Rauser*, 241 F.3d at 333.

For the purposes of this screening, the facts as pleaded by Hill also plausibly allege that his complaint to the PREA hotline was "a substantial or motivating factor" for the cell search and citation that Dennision filed. A plaintiff may plead this third requirement for a retaliation claim by alleging: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Watson*, 834 F.3d at 424 (citations omitted). Hill alleges that Dennision ripped down the sheets and Hill made calls to the PREA hotline on both August 5 and August 7. (Compl. at 3-4.) On August 8, when Dennision entered Hill's cell to search it, Dennision said, "you like making calls, right?", which, given the temporal proximity to the PREA calls he made, Hill reasonably understood to be a reference to his hotline calls. (*Id*. at 4.) Further, Dennision filed a citation alleging that Hill had covered his bunk with a sheet, disobeying direct orders, and a housing unit rule violation. (*See* Compl. at 11.) The bunk covering was the subject of the PREA calls that Hill made, and it may be reasonably inferred that Dennision filed the citation in response to Hill's PREA complaints about the same. *Williamson*, 2025 WL 1232624, at *2 (noting that misconduct charge was by its very nature motivated by plaintiff's filing a PREA complaint). Considering the timing alleged and the allegations as a whole, Hill has sufficiently alleged that his PREA complaints were a substantial and motivating factor for Dennision's actions. *See Watson*, 834 F.3d at 424 (noting that "causation, like any other fact, can be established from the evidence gleaned from the record as a whole"). Accordingly, Hill's

13

allegations state a plausible claim of retaliation, and he will be permitted to proceed on this claim against Dennision.[6]

### C. Claims under the PREA

Hill's claim that the PREA has been violated cannot proceed because the PREA contains no private right of action. *See Bowens v. Emps. of the Dep't of Corr.*, Civ. A. No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016) (stating that a plaintiff cannot "bring a private action to enforce obligations set forth in the PREA, whether through the statute itself or through [an] attempt to enforce the [institution's] PREA policy via section 1983"), *aff'd sub nom. Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017); *see also Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) (noting that "other courts addressing this issue have found that the PREA does not establish a private cause of action" (citations omitted)). In addition, to the extent that Hill intends to complain about the results of the PREA audit, *i.e.*, that a PREA representative agreed that a shower curtain was needed but one had not been installed (*see* Compl. at 5), he has no freestanding right to such an investigation. *See Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (stating that "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim" (citation omitted)). Accordingly, any claims premised upon violations of the PREA must be dismissed as a matter of law.

---

[6] To the extent that Hill might assert that Amozou's actions constituted "adverse actions," that claim is implausible and would be dismissed. *Naranjo*, 2023 WL 5928506, at *2 (concluding that "name-calling," even if linked to a request to file a PREA complaint, was "insufficiently adverse" to support a First Amendment retaliation claim (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)) (citation omitted)).

**IV.     CONCLUSION**

For the foregoing reasons, the Court will grant Hill leave to proceed *in forma pauperis* dismiss his claims against Defendants CCP and Amozou with prejudice, and dismiss his claim under the PREA with prejudice. The retaliation claim against Defendant Dennision will be allowed to proceed at this time. The relief sought in Hill's submissions at ECF Nos. 7, 9, and 10 will be denied.[7] Hill will be given the option of proceeding on his remaining claim or filing an amended complaint in the event he seeks to amend his other claims against Defendant Dennision. An appropriate Order follows, which provides further guidance for proceeding.

                              **BY THE COURT:**

                              /s/ John R. Padova, J.

                              **JOHN R. PADOVA, J.**

---

[7] In ECF Nos. 7, 9, 10, and 11, Hill seeks to amend his damages claims, to add a party, and to bring criminal charges against some defendants. Hill cannot proceed in this fashion because the Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant. *See Bryant v. Raddad*, Civ. A. No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'" (quoting *Uribe v. Taylor*, Civ. A. No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)); *Brooks-Ngwenya v. Bart Peterson's the Mind Tr.*, Civ. A. No. 16-193, 2017 WL 65310, at *1 (N.D. Ind. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent . . . ."). If Hill seeks to amend his complaint, he must do so consistent with the Court's order. With respect to ECF No. 10, to the extent that Hill seeks to initiate state criminal charges against any Defendant, the Court has no authority to order such relief. *See Kent v. Ed Carber Inc.*, 467 F. App'x 112, 113 (3d Cir. 2012) (*per curiam*) (affirming dismissal of claims seeking initiation of criminal charges because "a private person does not have a 'judicially cognizable interest in the prosecution . . . of another'" (alteration in original) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))). Additionally, to the extent Hill seeks to add the Warden of CCP as a Defendant in this case, he has not alleged any factual basis for establishing that the Warden was personally involved in the events that give rise to his claims, as would be required to state a claim against the Warden.