IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND HILL, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-5019 |
| | : | |
| CHESTER COUNTY PRISON, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**PADOVA, J.**                                                          **FEBRUARY 9, 2026**

*Pro se* incarcerated Plaintiff Raymond Hill filed this civil action under 42 U.S.C. §1983 against Chester County Prison ("CCP"), C/O Dennision, and C/O Amazou, alleging violations of his constitutional rights and of the Prison Rape Elimination Act ("PREA"). The Court granted him leave to proceed *in forma pauperis* and dismissed all claims except his retaliation claim against Dennision. *Hill v. Chester Cnty. Prison*, Civ. A. No. 25-5019, 2025 WL 3214756, at \*7 (E.D. Pa. Nov. 17, 2025). The Court gave him the option of filing an amended complaint to attempt to cure the defects in the rest of his claims against Dennision, and Hill filed this Amended Complaint.[1] (ECF No. 14). In addition to naming Dennision, Hill now seeks to add the Commonwealth of Pennsylvania and Chester County as Defendants. The Court will dismiss with prejudice all claims raised in the Amended Complaint except for the retaliation claim against Dennision.

---

[1] Because he had concerns about his incoming and outgoing mail at the prison, Hill subsequently filed a duplicate of the Amended Complaint, which was docketed as a "Second Amended Complaint." (*See* ECF No. 15.) The duplicate filing (ECF No. 15) will be stricken from the docket.

## I.   FACTUAL ALLEGATIONS[2]

At the time of the alleged events, Hill was a pretrial detainee incarcerated at CCP.  (Am. Compl. at 2, 4.)  In April 2025, as Defendant Dennision was making his rounds at CCP, he stopped at Hill's cell.  (*Id*. at 17.)  Dennision allegedly told Hill to take a bedsheet off his body so that he could see "flesh and movement."  (*Id*.)  Hill replied, "[Y]o bro don't make any weird statements to me like that[,] there are female inmates that are housed in this jail[,] that would be sexual harassment to a woman [i]f you made that statement."  (*Id*.)  Dennision apparently agreed and went on with his rounds.  (*Id*.)

On August 5, 2025, Dennision worked on the "M-Even" block from 4 p.m. to 12 a.m. (*Id.*)  Hill and inmates in cell numbers 34 and 38 hung sheets to cover half of their cell gates so that their private parts would not be exposed while they used the bathroom or when they returned unclothed from the shower.  (*Id*.)  Dennision ordered them to take the sheets down or he would remove them.  (*Id*.)  Hill responded that if the sheets were halfway up, it meant they were naked from showering.  (*Id*.)

Hill placed a call that day to the PREA hotline to file a complaint about Dennision allegedly exposing him while he was naked using the toilet in view of 60 other inmates.  (*Id*. at 13.)  Hill claims that almost every inmate on Hill's block witnessed him naked.  (*Id*.)  Hill told Dennision that he called PREA about the incident and asked if Dennision would contact a supervisor to interview Hill and make a report.  (*Id*.)  Dennision refused and issued a citation against Hill for the incident.  (*Id*.)

---

[2] The factual allegations set forth in this Memorandum are taken from Hill's Amended Complaint ("Am. Compl."). (ECF No. 14.)  The Court adopts the pagination supplied by the CM/ECF docketing system.  Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up as needed.

On August 7, 2025, Dennision was working on the M-Even block and, when Hill had hung the sheet in his cell, Dennision ripped the sheet down exposing Hill. (*Id.*) Dennision did the same thing to inmates in two other cells. (*Id.*) Hill asserts that "the whole M-Even block" called the PREA hotline. (*Id.*) Hill asked his girlfriend to call PREA and file a complaint on his behalf. (*Id.*) He also called PREA again and filed another complaint. (*Id.*) The inmates living on the block informed Dennision that PREA was being called, and Hill informed him again about the complaint and requested a supervisor. (*Id.* at 13-15.) Dennision again refused. (*Id.* at 15.) Hill states that ordinarily a supervisor is called when requested by an inmate calling PREA or to witness a call to PREA. (*Id.*) A report is then made about the call and incident. (*Id.*)

On August 8, during the lock-in after the evening meal, Dennision appeared at Hill's cell even though he was not working on the block. (*Id.*) Dennision allegedly told Hill, "you like making calls, right?" and directed him to exit the cell. (*Id.*) Dennision and Amozou then searched Hill's cell. (*Id.*)  After the search, Hill asked for a supervisor because he was being targeted. (*Id.*) Amozou responded by threatening to "whip [Hill's] ass," and telling Hill that he "live[d] under a bridge" and was a junkie. (*Id.* at 19.) Hill's cellmate had to step in front of Amozou to stop him from hitting Hill. (*Id.*) Hill claims these events were in retaliation for his calling PREA. (*Id.*)

A month later, Hill met with a sergeant who told him to be properly dressed in the cell but did not mention the retaliation by Dennision. (*Id.* at 7.) Hill asked the sergeant to speak with someone about the retaliation but no one got back to him. (*Id.*) Hill contacted the Prison Society. (*Id.*) Hill's girlfriend allegedly emailed the Prison Society about the incident too. (*Id.* at 19.)

Hill submitted a grievance on August 12, 2025, about the events involving Dennision's alleged voyeurism and Amozou's attempt to fight him. (*Id*. at 25.) He was unable to appeal it because the form contains no option for appeal, but he "verbally asked to appeal [his] grievance." (*Id*. at 7-8.) As for the misconduct citation that Dennision issued, Hill was found not guilty after a hearing. (*Id*. at 19, 23.)

Hill's lawsuit was received by this Court on August 26, 2025. (ECF No. 2.) After his initial Complaint except for the retaliation claim was dismissed, Hill filed this Amended Complaint which sought to add two new defendants to the lawsuit. (Am. Compl. at 2-3.) He states that his injuries include mental and emotional damage because he was molested as a child. (*Id*. at 21.) He is fearful of Dennision retaliating against him again or assaulting him physically or verbally. (*Id*.) As relief, he asks for Dennision to be terminated from his position at the prison, for guards to follow PREA procedures, and for money damages.[3] (*Id*. at 5.)

## II.    STANDARD OF REVIEW

Because Hill was granted *in forma pauperis* status, the Court must screen the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court to dismiss the amended complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains

---

[3] The Court lacks the authority to order Dennision to be terminated from his position at CCP. *Hall v. Carny*, Civ. A. No. 22-4094, 2023 WL 187569, at *1 n.3 (E.D. Pa. Jan 13, 2023) (citation omitted) (dismissing with prejudice request that defendant's employment be terminated); *Buskirk v. Pennsylvania Bd. of Prob. & Parole*, Civ. A. No. 22-1826, 2022 WL 4542094, at *2 n.4 (E.D. Pa. Sept. 28, 2022) (stating "the Court has no authority to terminate the employment of a state employee"). The request for that relief will thus be dismissed.

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not

suffice.  *Iqbal*, 556 U.S. at 678.

As Hill is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*,

8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244-45

(3d Cir. 2013)).  However, "pro se litigants still must allege sufficient facts in their complaints to

support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245).

## III.    DISCUSSION

Hill's Complaint cites to the First, Fourth, Eighth, and Fourteenth Amendments as the

basis for his legal claims under 42 U.S.C. § 1983.  (Am. Compl. at 3.)  The Amended Complaint

may be fairly read to raise claims for sexual harassment and invasion of privacy against

Dennision in violation of the Fourteenth and Eighth Amendments, as well as a retaliation claim

under the First Amendment against him.[4]  (*Id*. at 3, 13-21); se*e Vogt*, 8 F.4th at 185 (stating that

the Court will "apply the relevant legal principle even when the complaint has failed to name it."

(citing *Mala*, 704 F.3d at 244)).

The vehicle by which federal constitutional claims may be brought in federal court is an

action under § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a

right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S.

42, 48 (1988) (citations omitted).  In a § 1983 action, the personal involvement of each defendant

---

[4] Dennision repeats the same allegations of retaliation from his original Complaint in his Amended Complaint, which the Court previously found to be sufficient to state a plausible claim. *Hill*, 2025 WL 3214756, at *6-7.  Accordingly, for the reasons previously articulated, the retaliation claim will proceed.

in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

**A.     Defendants Commonwealth of Pennsylvania and Chester County**

Hill seeks to name the Commonwealth of Pennsylvania and Chester County as Defendants in addition to Dennision in his Amended Complaint.  As a factual matter, however, Hill has not pleaded any allegations against the Commonwealth of Pennsylvania or Chester County.  Even if he had, any claims against the Commonwealth of Pennsylvania would necessarily be dismissed because states are not considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).  Furthermore, the Eleventh Amendment bars federal suits for money damages against a state and its agencies. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  The Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b).

In order to state a claim against Chester County, Hill needed to allege that the County's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (citation omitted).  To satisfy this pleading standard, a plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).  It is not enough, however, to allege the existence of a policy or custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  The policy or

custom pleading requirement applies regardless of the relief sought, i.e., whether the plaintiff seeks damages or prospective relief such as injunctive relief or declaratory relief. *See Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 31 (2010). It therefore applies here, where Hill requests that the County prison guards be ordered to follow PREA requirements. Hill has alleged no custom or policy, much less any facts that suggest the County is involved in Hill's alleged constitutional violation. Thus, his claim against the County cannot proceed.

Further, to the extent that Hill checked a box indicating that he was suing Dennision in his official capacity, any such claims will be dismissed. Claims against County officials named in their official capacity are indistinguishable from claims against the County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n.55)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166 (citation omitted). As noted, Hill has not stated a claim pursuant to *Monell* against Chester County. For all of these reasons, all claims against the Commonwealth and Chester County, plus official-capacity claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**B**.      **Due Process Claim for Sexual Harassment**[5]

Sexual abuse of a prisoner can violate his Constitutional rights. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (citations omitted); *E. D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019). The Court understands Hill's claim to be one for voyeurism on the part of Dennision, as Hill

---

[5] Hill alleges that he was a pretrial detainee at the time of the alleged events. (Am. Compl. at 2, 3.) Accordingly, the Fourteenth Amendment, and not the Eighth Amendment, governs his claim for alleged sexual harassment. *See Jacobs v. Cumberland Cnty*, 8 F.4th 187, 193-94 (3d Cir. 2021) (citations omitted).

does not allege any contact of a sexual nature.  See *Higgs v. N.J. Dep't of Corr.*, Civ. A. No. 24-1712, 2024 WL 3811985, at \*2 (3d Cir. Aug. 14, 2024) (*per curiam*) (determining that complaint did not allege anything sexual beyond a "bald assertion of voyeurism" when prison guard opened shower curtain and stood with it open for a few seconds).  For a pretrial detainee, a sexual abuse claim is analyzed using an objective-reasonableness standard; that is, whether the prisoner has alleged "facts that plausibly show that the actions of the defendant were objectively unreasonable."  *Chin v. Warfel*, Civ. A. No. 23-4220, 2024 WL 665536, at \*4 (E.D. Pa. Feb. 15, 2024) (considering pretrial detainee's sexual abuse claim on statutory screening and utilizing an objective reasonableness standard) (citations omitted)).

Hill restates the same factual allegations in the Amended Complaint as he alleged before, and, as with his original Complaint, he has not met the legal standard for stating a claim for sexual abuse.  He alleges that, on one occasion, Dennision asked him to move a sheet covering his private parts so that he could see "flesh and movement." (Am. Compl. at 17.)  After Hill pointed out that the comment would constitute harassment if it were said to a woman, Dennision agreed and left Hill alone.  (*Id.*)  Hill also appears to challenge Dennision's ordering Hill to take down sheets and/or "ripping down" sheets while Hill was naked, exposing his body on two occasions.  (*Id.* at 13, 17.)  Allegations of "non-verbal, non-physical staring on several occasions" are not "sufficiently intolerable and cruel" to state a constitutional violation under the objectively unreasonable standard. *Kokinda v. Pa. Dep't of Corrections*, 779 F. App'x 944, 950 (3d Cir. 2019) (citations omitted) (affirming dismissal of claim alleging that officer stared at inmate's groin area on numerous occasions "for an uncomfortable duration" when inmate wore underwear); *Higgs*, 2024 WL 3811985, at \*2 (affirming dismissal of Eighth Amendment claim for officer's pulling back shower curtain and concluding that "[s]uch bald assertions [of

8

voyeurism] are insufficient to satisfy the objective or subjective prong of the analysis"); *Chin*, 2024 WL 665536, at *4 (rejecting Fourteenth Amendment sexual abuse claim where correctional officer allegedly made a derogatory remark about the size of inmate's genitals). Because Hill has not pleaded a plausible Fourteenth Amendment claim after being permitted another attempt to state a claim, and it will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) with prejudice.

      **C.**      **Claim for Invasion of Privacy**

Hill also appears to make a second attempt at lodging an invasion of privacy claim, but he again fails to state a plausible claim. The Fourth Amendment to the United States Constitution, as incorporated to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Prisoners have a "limited right of bodily privacy, subject to reasonable intrusions necessitated by the prison setting." *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016). "The test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

Hill claims that, on two occasions, he put up a sheet to protect his bodily privacy, and Dennision ordered him to take it down. (Am. Compl. at 13, 17.) On the second occasion, when Hill did not comply, Dennision "ripped" down the sheet while Hill was naked, in view of almost 60 inmates housed on his block. (*Id*. at 13.) However, this claim does not plausibly allege a constitutional deprivation, given the realities of prison life. *See Pickett v. Williams*, Civ. A. No. 23-1411, 2023 WL 3044589, at *4 (E.D. Pa. Apr. 21, 2023) (finding no plausible constitutional violation where officer opened cell door while prisoner was using toilet, looked at prisoner's penis, and opened door for others on the block to see prisoner (citing *Bracey v. Price*, Civ. A.

9

No. 09-1662, 2012 WL 6015727, at *17 (W.D. Pa. Dec. 3, 2012) ("Occasional viewing of inmates while showering or using toilet facilities has been held to be appropriately within the parameters of maintaining institutional security and therefore, constitutional."), and *Williams v. Ann Klein Forensic Ctr.*, Civ. A. No. 18-9606, 2020 WL 614657, at *3 (D.N.J. Feb. 10, 2020) ("In the context of allegations regarding viewing plaintiff on the toilet, courts typically look to whether incident[s] were regular/frequent and how close the viewing was in determining whether a plaintiff has stated a Fourth Amendment constitutional claim."))).  "While unpleasant, the lack of privacy to use the toilet is a normal aspect of prison life . . . ."  *Pickett*, 2023 WL 3044589, at *4 (citing *Rhodes v. Chapman*, 452 U.S. 337 (1981)).  Hill has not stated a cognizable invasion of privacy claim in his Amended Complaint, and that claim will therefore be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss all claims against all Defendants except for the retaliation claim for damages alleged under the First Amendment against Defendant Dennision in his individual capacity.  An appropriate Order follows and directs the Clerk's Office to send a waiver of service to Dennision so he may respond to the remaining retaliation claim.

**BY THE COURT:**

**/s/ John R. Padova, J.**

_____

**JOHN R. PADOVA, J.**
